**BARNES v. BLUE PLATE FOODS, Inc., et al.**

No. 16353.

Court of Appeal of Louisiana.   Orleans.

April 20, 1936.

Jno. A. Smith, Jr., of New Orleans, for appellant.

Jas. G. Schillin, of New Orleans, for appellee.

JANVIER, Judge.

On the morning of September 9, 1933, Edward A. Buttner, Jr., aged 4, was run over by a truck owned by Blue Plate Foods, Inc., and operated at the time by Joe Edge, an employee acting within the scope of his employment. Being in the neighborhood of the Baptist Hospital, Edge took young Buttner to the emergency clinic at that institution, and requested that he be given such emergency treatment as might be found to be necessary.

Both bones of one leg had been badly fractured, and the interne in charge, under the rules of the hospital, sent for Dr. George Barnes, a practicing physician and surgeon, who was on the medical staff of the said institution and who at that time was in charge of the emergency clinic. Dr. Barnes set the leg and did all that was necessary, continuing to care for the boy for many days, with the result that the fractures have knit and that the leg has returned as nearly as possible to its normal condition.

Dr. Barnes called upon Blue Plate Foods, Inc., for payment of his bill amounting to $259, alleging that both Edge, the operator of the truck, and an official of the said Blue Plate Foods, Inc., had authorized him to render the said medical and surgical services, and had informed him that the said corporation would be responsible for his bill.

Defendants contend that no such authority was given by the official referred to, and that, in the absence of such authority from an authorized official of Blue Plate Foods, Inc., there was no right in Edge, a mere salesman and automobile truck driver, to obligate his employer for such services.

In the court a qua, there was judgment for the amount prayed for against Blue Plate Foods, Inc., but the suit as against Columbia Casualty Insurance Company was dismissed. The former corporation has appealed.

The plaintiff has not appealed from that part of the judgment which dismissed his suit as against the alleged insurance carrier.

There is no gainsaying the fact that Edge, on taking the boy to the hospital, stated to various employees and officials of that institution, and also to Dr. Barnes, that his employer would be responsible for all expenses, and it is shown conclusively that he requested that everything possible be done to properly care for the boy. This is testified to by at least four witnesses, including Dr. Barnes, and is not denied by any one. Edge himself did not appear as a witness. Consequently, even he did not deny it.

It is said by Dr. Barnes and by the employees of the hospital that Edge was asked whether he had authority to contract for such services and that he stated that he would procure the presence of an authorized officer of his company to cor-

roborate his request for treatment and attention to the boy, and that a short time later he returned, accompanied by an older man, who gave every outward appearance of authority, and who, after stating that he was an official of Blue Plate Foods, Inc., requested that all necessary attention be given to young Buttner. Unfortunately, no one could give the name of this alleged official.

■ The legal situation is thus quite confusing. There is no doubt that where a corporation is sought to be held liable as the result of such an agreement, the burden is on the plaintiff who seeks to hold it liable to show that the person who contracted for the services was authorized to do so. On the other hand, there is no doubt here that Dr. Barnes and the employees of the hospital were justified in assuming that the man who returned with Edge was, in fact, an authorized official of defendant corporation. Still, we would have difficulty in concluding that the defendant corporation should be held liable in the absence of proof of such authority, were it not for the fact that that corporation has done little, if anything, to procure the presence as a witness of its former employee, Edge, the driver of the truck. He was not placed upon the witness stand; nor was his testimony otherwise obtained. Some slight effort is made to show that he was not available, but the testimony of Mr. Fred Wendt, who states that he is the person who should have given such authority, if it had been given, is to the effect that he has made little effort to discover where Edge lives, or to produce him as a witness. His testimony is as follows: "I know where a relative of his (Edge) lives; I think it's the same address as he gave at that time; whether or not he is living there, I don't know."

■ Edge could have given the information as to the identity of the man he brought back to the hospital with him as an official of the defendant company. He was not produced for this purpose, and, with the exception of Mr. Wendt, no other employee or official was produced to clarify this situation. Though Edge lacked authority to contract on behalf of his employer for medical services generally, the rule is well settled that, in such an emergency where it is necessary that an injured person be given immediate treatment, such an employee is authorized by the exigencies of the situation to bind his employer for the cost of services so rendered.

In Mechem on Agency, vol. 1 (2d Ed.) § 718, we find the following: "Authority by necessity—Emergency.—Within a limited area, more sharply defined in England than in the United States, the authority of an agent may be enlarged by some particular necessity or by some sudden emergency, arising under circumstances in which it is still the duty of the agent to act, and in which the advice or directions of his principal cannot be obtained. It is, of course, ordinarily for the principal to determine what shall be done in such cases of necessity or emergency as were not provided for by the original authorization. He may prefer that nothing shall be done, or, if something must be done, that the situation shall be met by means of his own devising. He certainly will be vitally interested in being informed of the situation and given an opportunity to deal with it himself. If, however, there be a real necessity or emergency, and the principal cannot be communicated with because of the limitations of time or place or means, and something must be done to protect the interests of the principal, authority to do a fair and reasonable act, apparently adapted to the needs, and not going beyond the demands of the occasion, may properly be implied."

Of course, this authority would terminate immediately upon the performance of those emergency services, and, as soon as there arrives a reasonable possibility for communication with those actually in authority, the authority to so contract in such an emergency terminates because it results from the emergency alone. Therefore, had Dr. Barnes relied entirely on the authority given him by Edge, we doubt whether Edge's employer could have been held responsible for services rendered after the expiration of the period of emergency. But Dr. Barnes did not so rely. He demanded actual, not implied, authority, and he was justified in relying on the evidence of authority which the unnamed official seemed to possess and present.

■ We concede that if it could have been shown by defendant that no such official approved or that no such person who did approve was authorized, Dr. Barnes' claim would be a precarious one indeed. But the evidence tendered on his behalf, at least, throws upon defendant the burden of proving that no such authorized offi-

cial approved the rendering of the services, and it has failed to successfully bear this burden.

The value of the services rendered has been adequately proven.

It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be. and it is, affirmed at the cost of appellant.

Affirmed.